Mr. Rayfield. Thank you, Your Honor. May it please the court, Mike Rayfield for the appellant. No one has disputed, not the state courts, not the district court, and not the government on appeal, that if Pierce's lawyer had objected to the testimony, the objection would have been sustained under long-standing Indiana law. So there are just really two questions to ask about why counsel didn't object. One is whether she knew what the drumbeat rule was, and two, did she decline to object based on some kind of sensible strategy? Our position is that the answer to both questions is no, and either one of those answers independently satisfies the first prong of Strickland. So first, did Pierce's post-conviction hearing, his lawyer was asked point-blank if, quote, drumbeat testimony, repeating the victim's story over and over again before she testifies, sounds like a familiar basis for an objection to you. So I read that passage, and every time I read it, I feel that it's hopelessly ambiguous. You're right. Counsel actually asked her twice, were you aware that you had this drumbeat testimony, are you familiar with that? And at that point, there's just a request for clarification, as what, I'm sorry. So I can't get anything out of that. And then the questioner defines drumbeat testimony and says, does that sound like a familiar basis for an objection to you? And once again, you don't actually get a square answer. What you get is, um, no, that's not one I would have made for this. No. So I don't see her saying, that's not one I'm familiar with. She says, that's not one I would have made. And so the next question in my mind is, why wouldn't you have made it? Because you never heard of it? Because you think it's not appropriate for this situation? You know, does it didn't fit in with your trial strategy? You know, other things. And so then I say to myself, well, you have this ambiguous exchange. And we are not the first or even the second or third decision maker here. This is habeas. And so we owe all these layers of deference under AEDPA. So why is the Indiana Court of Appeals crazy to read this the way I'm suggesting perhaps you could? It's just, I wouldn't have made that objection. I've never heard of it. Well, I think if you think there's ambiguity in the answer, then I think it's cleared up pretty well during Newland's cross-examination. And if you look at pages 913 to 914 of the appendix, when the state's lawyer asks her again about failing to object to repetitious testimony, Newland talks about why, responds by talking about why she didn't make an ask-and-answer objection. And the reason for that is that she's focused on admissibility, on repetition, not on sequencing. But you have to show by clear and convincing evidence, which as you know is a high standard, that the state court got it wrong. How, without an express admission from her that she wasn't aware of this evidentiary rule in Indiana, how can you get around the presumption and establish clear and convincing evidence? Because even what you're arguing now doesn't directly address the question of did she know about this rule in the first place. Right, so a couple things on that. First, I think, I mean, the framing of the question was, are you familiar with the drumbeat rule? She answers no, but then, I agree, she then goes on to qualify, arguably qualify that. But I think the other... She doesn't, she doesn't say no to are you familiar with it. She says, as what, I'm sorry. No, but then the next question is... Does that sound like a familiar basis for an objection to you? It wasn't, I mean, he asked a different question. And then she says, oh no, that's not one I would have made, whatever the I would have made. So it's the basis for an objection, not, if he had followed up with, well, are you familiar with this? It might be a different story, but that's not the question that was followed up on. Fair enough, Your Honor. And so let me just point to a couple of things. One is that she was asked about several different objections before she was asked about the drumbeat objection. Hearsay, why she didn't object to the state's presentation of a social worker on child molestation victims generally. And each time, she gives an explanation, which is exactly what you would have expected her to do if she understands the drumbeat rule. But that's not the question she was asked. I'm sorry. That's not the question. She was, she's asked a different question here about the drumbeat. Are you aware of the possibility of objecting to the testimony as drumbeat? And then she says as what? I'm sorry. And the lawyer asked a different question. Again, about, does that sound like a familiar basis for an objection to you? Right, so was it familiar to her that she could object on the basis that there was all this testimony before the victim testified? And she said that's not one I would have made for this, no. And I agree with what Judge Wood said. That seems very ambiguous and I don't know how you meet clear and convincing with ambiguity. So I think you can look at, you can look at what she said when she's asked about a follow-up question on Cross. You can look at how she responds to the other, the other objections that, where she actually provides an explanation. But here's the thing. What she certainly doesn't do is offer a strategy for failing to object. She doesn't offer any explanation at all. And that sort of brings me to the second point, which is that there was no sensible strategy for her failure to object. So can I ask you, I mean you mentioned briefly a minute ago sequencing, and I just want to make sure I have your argument straight in my mind. It's not that these other witnesses couldn't come in, but with sequencing, if JW had gone first and there had been that, and then these various other people had come in, there wouldn't have been this building up of her credibility over the course of these, a bunch of adults, very flattering language about adults, a bunch of adults all saying the same thing, and then JW coming in and just tying it up like a bow. If JW had gone first, there may, is that, that's your argument, right? Exactly. She just blew it on the sequencing. She blew it on the sequencing. And it's important to keep in mind that that's not just like a subtle thing. It's important to keep in mind that this is, that Indiana courts consider this objection to be so critical that it's reversible error for a trial court to deny it, precisely because it results in delayed cross-examination, and in the words of one Indiana appellate court, quote, overcomes the defendant's innocence. And here, I think the straight, the state court's error is pretty straightforward. It correctly found that Newland's general strategy was to argue that JW wasn't credible because her account of Pierce's conduct changed over time, but then the court found that a drumbeat testimony would have undermined that strategy because it would have made the adult testimony inadmissible, and it would have forced Newland to attack JW's credibility in isolation, words of the state court. And that's simply not how the drumbeat rule works. But how is that a Strickland constitutional violation? The court's interpretation of Indiana state evidentiary law, maybe that's wrong, but that can't be the basis for a constitutional violation of clearly recognized Supreme Court law. Well, it removes the state court's, it eliminates the state court's rationale for why her performance was not deficient under Strickland. If you don't have that, if you don't have the... How can we simply eliminate the state court's rationale? It is what it is. I'm sorry, I don't, I don't mean eliminate. I mean it, the, the way the rule works refutes the state's court's rationale. The rationale doesn't make sense. So you're now, yeah, I'm getting more worried. I wasn't worried earlier, but it now distinctly sounds like you're saying the Indiana court just didn't understand how Indiana law works, and that led it to an indisputable case. I don't see how we can say anything like that. I think we're supposed to assume that they understand exactly how state law works. Only federal law matters. I mean, I think it's interesting to look at Judge Bailey's dissent in the, in the Indiana appellate court, where he disagrees with the state court and says, you know, this, all this would have done was change, was change the chronology. And if you take that rationale out, if you say that rationale was unreasonable, then there's really no basis for the state court to say this was a strategic decision, because it's not, because the, the, the failure to make a drumbeat objection couldn't possibly have undermined the strategy if the objection had been presented properly. So I'll reserve the remainder of my time if that's okay with the court. Certainly. Ms. Templeton. May it please the court. The court, the state court reasonably determined that trial counsel did not perform deficiently. And a couple of points. The, this court, of course, cannot determine that Indiana State Court applied Indiana State Court in, state law incorrectly, excuse me, and to that extent it is the dissent that got Indiana State law wrong. In Stone itself, which is the case Pierce relies on for the drumbeat repetition testimony, like the progenitor of this line of objection in Indiana, the adults testified after the victim. It is drumbeat repetition when an adult lends their credibility to the victim's testimony, no matter when in sequence that happens. And there's at least one other Indiana court that has found reversible error when the adults testified after the child victim did. So an objection here would not have simply reordered the testimony of the witnesses, but it would have eliminated the specific testimony to demonstrate the inconsistencies in JW's stories through the various adults she reported this to. The adults still would have been permitted to testify that JW disclosed molest to them, but without the context of what she actually said. And so at that point, trial counsel would have been unable, or would have been less able, I guess, to argue to the jury that JW lied to her grandfather, she lied to the nurse, she lied to her mother, she lied to the Comfort House, which was the forensic interviewer, and she lied to the jury itself. So can I ask you, just to be clear, you are disputing, I take it, your counsel understood what this drumbeat objection is and had made it that it necessarily would have been granted? That the drumbeat testimony would have been kept out? I think if she had made that objection, it would have been successful, and it wouldn't have simply, and the point I was trying to make, Your Honor, is that it wouldn't have simply reordered the witnesses. So it just, you think it would have kept them out? Yes, I think it would have kept the specific statements. And it would have kept the specific testimony. So counsel walked away, apparently for no strategic reason, from an objection that would have kept damaging testimony about his client out of the court. I disagree that it was for no strategic reason, Your Honor. Here, because counsel permitted this testimony to be admitted, what the jury heard over and over again, before JW testified, was that JW told different stories, that JW lied during her first forensic interview, that JW's own mother thought she was, that she lied, and that is entirely consistent with counsel's strategy, overall strategy, to establish that JW was a liar. It seemed like part of the strategy was also to bring out the escalating nature of the lies? Yes. You're saying if the drumbeat objection had been made and sustained, that she couldn't have brought that in? Correct. Correct. And the state court reasonably determined that what counsel wanted to do was ensure that the jury heard all of these different versions. And counsel had deposed all of these witnesses ahead of trial. She knew what they were going to say. She knew what was going to come in. And she could make a reasonable strategic decision at that point about what parts of their testimony she wanted in and how that fit within her overall strategy. It is not, it is not sufficient to find reversible error that another, another trial attorney could have come to a different conclusion. It was still reasonable for the state court to determine that this attorney performed, that this court, that this attorney did not perform deficiently. There are no other questions, Your Honors? So the state court said nothing about the prejudice half of the Strickland inquiry. So if we, if we were to disagree with you on the performance, there's still prejudice out there. Correct. Yes. And here, I think what that prejudice inquiry would look like would be comparing the trial, if just J.W. had testified. And J.W. acknowledged these inconsistencies in our statements on cross-examination. She acknowledged that she lied during her first forensic interview. She acknowledged that she told her grandfather that Pierce had only molested her four times the first time she reported it. She acknowledged, she said that she was asleep instead of being awake. She acknowledged all of the discrepancies. And so the jury would have been left with the same information to evaluate J.W.'s credibility. And so there's no reasonable probability of a different outcome. Okay. Thank you. Thank you. Mr. Rayfield, anything further? So if you read Modessett, it's clearly talking about, the Indiana Supreme Court is clearly talking about sequencing. It's talking about how this tactic causes delayed cross-examination. It says immediate cross-examination is the most effective and delayed cross-examination is least effective. Prior to putting the victim on the stand, the victim's veracity had been, in essence, vouchsafed. So I just disagree with the government's reading of state law. But the point is, is that if you remove that, if the state law rationale that makes no sense, then there's no strategy to back up Newland's decision. Now, as for the, as for Your Honor's question about the escalating testimony, that could have, Newland could have elicited that testimony from J.W. herself. If J.W. had testified first, she could have asked her, what did you tell your grandfather and when? What did you tell your father and when? Thank you, counsel. Mr. Rayfield, the court appreciates your willingness to accept the appointment and your assistance to the court as well as your client. The case is taken under advisement and the court